AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Eric Eugene JOHNSON | ) | Case No. 3:18 mj 723 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __6/18__ in the county of __Montgomery__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 and 841 (b)(l)(A) | attempted possession with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine |

This criminal complaint is based on these facts:
See Affidavit Timothy Wallace

☑ Continued on the attached sheet.

_____
Complainant's signature

Timothy Wallace, SA of HSI
Printed name and title

Sworn to before me and signed in my presence.

Date: 11-2-18

_____
Judge's signature

City and state: Dayton, Ohio

Sharon L. Ovington, US Magistrate Judge
Printed name and title

ATTACHMENT "A"

AFFIDAVIT

1. I, Timothy J. Wallace, a Special Agent for United States Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), am hereinafter referred to as Affiant. As such, Affiant sets forth the following in support of an arrest warrant for Eric Eugene JOHNSON.

2. I am an employee of Homeland Security Investigations assigned to the Cincinnati Resident Office. I have been a Special Agent with HSI since July 2009. I attended and graduated from the basic agent training course in Brunswick, Georgia and have received extensive training in the investigation of narcotics trafficking and financial crimes from Homeland Security Investigations, as well as ongoing in-service training.

3. Since February 2018, Affiant has been assigned to the HSI Border Enforcement Security Task Force (BEST) in Dayton, Ohio.

4. As a Special Agent for HSI, Affiant is charged with the duty of enforcing among other Titles, the Controlled Substance Act, Title 21, United States Code, together with other assigned duties as imposed by Federal law.

5. By virtue of Affiant's employment with HSI, I perform and have performed various tasks which include, but are not limited to:

    a) Conducting surveillance for the primary purpose of observing the activities and movements of drug traffickers;

    b) Functioning as a case agent which entails the supervision of specific aspects of drug investigations; and,

    c) The tracing and tracking of monies and assets gained by drug traffickers from the illegal sale of drugs.

6. This Affidavit is submitted in support of a criminal complaint, and seeks the issuance of arrest warrant for Eric Eugene JOHNSON, for violations of 21 U.S.C. §§ 846 and 841 (b)(l)(A)(attempt to possess with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine).

7. The information contained in this Affidavit is based upon an investigation conducted by your Affiant and other law enforcement officers. All of the details of the investigation are not included in this Affidavit, rather only information necessary to establish probable cause of the aforementioned violations.

## FACTS

### FACTS SUPPORTING PROBABLE CAUSE

1. Unless otherwise noted, when I assert that a statement was made, I received the information from a law enforcement officer who provided the information to me, either verbally or in a written report. The officer providing me with the information may have received the information by way of personal knowledge or from another source.

2. During mid-May 2018, Homeland Security Investigations (HSI) Douglas, AZ (hereinafter collectively referred to as "Investigators") received information regarding an Ohio based Drug Trafficking Organization (DTO) which indicated an individual known as "Ejay" (later identified as Eric Eugene JOHNSON) was seeking a source of supply of narcotics from the Douglas, AZ area. Through various investigative techniques investigators contacted JOHNSON, negotiating the sale of five kilograms of cocaine

3. On June 14, 2018, an Undercover Agent (UCA) placed an outgoing telephone call to 323-691-8421. During the conversation, the caller self-identified as "Ejay" (Eric Eugene JOHNSON). JOHNSON and the UCA discussed a five-kilogram cocaine transaction for which JOHNSON was to pay $29,000 per kilogram of cocaine.

4. On June 20, 2018, the UCA had another phone conversation. The UCA and JOHNSON agreed to meet on Thursday (June 28, 2018) or Friday (June 29, 2018) to conduct the cocaine transaction they had discussed on June 14, 2018.

5. During this conversation, the UCA asked JOHNSON to wire money to a bank account that the UCA would provide in order to show the UCA that he (JOHNSON) was serious about the transaction and had the money (to complete the cocaine transaction). JOHNSON declined. JOHNSON then assured the UCA and stated, "I 100% guarantee.

This is my money. I got my own. I don't gotta call nobody. I'm not waitin on nobody. I got my own money, it's my money."

6. On June 28, 2018, the UCA made a telephone call to JOHNSON. The UCA told JOHNSON that he/she and the truck would be in the Cincinnati area the following morning. JOHNSON affirmed that he (JOHNSON) was ready. The UCA instructed JOHNSON to send a picture of the money and he/she (UCA) would send a picture of the cocaine when he/she had it. The UCA instructed JOHNSON to put the money in a cereal box and then send a picture so he/she (UCA) could verify that JOHNSON had the money.

7. On June 28, 2018, the UCA received an incoming text message from JOHNSON. JOHNSON told the UCA that he (JOHNSON) was unable to fit the money into a cereal box and would have to put the money in shoe boxes. JOHNSON then sent the UCA approximately seven photographs via text. Each photograph depicted large amounts of United States currency, bound with rubber bands, lying on tan carpet.

8. On June 29, 2018, at approximately 10:25 a.m., investigators established surveillance at 3657 Canyon Drive, Cincinnati, OH with both ground surveillance units and Customs and Border Protection Air support. Investigators observed a black Nissan Maxima, bearing Ohio license plate FXB5342, parked in the driveway of the residence.

9. At approximately 11:33 a.m., the UCA made an outgoing telephone call to JOHNSON. JOHNSON asked the UCA if he (JOHNSON) could purchase "two extra" (two more kilograms of cocaine).

10. At approximately 12:15 p.m., the UCA made an outgoing telephone call to JOHNSON. The UCA told JOHNSON that he/she (UCA) had 3 extra (kilograms of cocaine) and asked if JOHNSON wanted to purchase them. JOHNSON asked how much (money) it would be total. The UCA reminded JOHNSON that they (UCA and JOHNSON) had agreed on a price of $29,000 per kilogram of cocaine. JOHNSON told the UCA that he (JOHNSON) would "just do the six (kilograms of cocaine)." The UCA agreed to bring JOHNSON six kilograms of cocaine and reiterated that JOHNSON would owe $174,000. JOHNSON affirmed that he (JOHNSON) had $174,000.

11. At approximately 12:41 p.m., JOHNSON exited the residence and placed an item in the trunk of the Nissan Maxima. JOHNSON then returned to the residence. At approximately 12:47 p.m., JOHNSON exited the residence, entered the black Nissan

Maxima and departed the residence. Investigators maintained surveillance on JOHNSON.

12. At approximately 12:57 p.m., the UCA made an outgoing telephone call to JOHNSON. JOHNSON told the UCA that he (JOHNSON) was on his way (to the UCA). JOHNSON and the UCA agreed to meet at exit 41 off of Interstate 75.

13. At approximately 1:11 p.m., JOHNSON entered and parked at the Tri-County Mall. Three unidentified black males met with JOHNSON at his vehicle. The males appeared to come from a blue and white Cadillac Escalade parked next to JOHNSON's vehicle. One of the males entered the passenger seat of the Nissan Maxima. Another male (investigators were unable to determine if this was JOHNSON or one of the other males) retrieved an item from the trunk and placed it in the back seat of the Nissan Maxima. A short time later, the male returned the item to the trunk of the vehicle. The Escalade then departed with two unidentified black males. JOHNSON departed shortly thereafter with an unidentified black male (later identified as Ronald BROWN) in the passenger seat. The vehicle traveled north on Interstate 75.

14. At approximately 1:33 p.m., Ohio State Highway Patrol Officers (OSP) in marked police vehicles, conducted a traffic stop on the black Nissan Maxima driven by JOHNSON. Officers identified JOHNSON as the driver of the vehicle and Ronald BROWN as the passenger of the vehicle. A narcotic detection canine gave a positive indication for the presence of a narcotics odor at the right front door seam of the vehicle. A subsequent search of the vehicle resulted in the seizure of approximately $175,000. The currency was located in the rear of the vehicle (approximately $165,000) concealed in two shoe boxes and in the center console ($10,000) of the vehicle.

15. Based on the facts set forth in the Affidavit, Affiant believes that there is probable cause to issue a criminal complaint and arrest warrant against Eric Eugene JOHNSON for violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(attempt to possess with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine).

Timothy J Wallace, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on November 2nd, 2018

Honorable Sharon L. Ovington
United States Magistrate Judge